

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-10-00185-CR

JOSE MARTINEZ                                    APPELLANT

V.

THE STATE OF TEXAS                               STATE

------------

FROM THE 432ND DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

In two points, Appellant Jose Martinez asserts that the evidence is legally and factually insufficient to support his conviction for aggravated assault with a deadly weapon. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. Factual and Procedural History

Oliverio Carillo was at the home of his cousin, Fernando Carillo, when they decided to go to the store.[2] Oliverio's and Fernando's accounts about what occurred next contained some differences, but generally, their testimonies were that as they started to leave Fernando's house, a man in a truck slowly drove by them. The man was alone. He made a u-turn, drove back in their direction, asked them if they had a problem with him, and pointed a gun at Fernando. They felt scared and threatened when the man pointed the gun but neither ran away.

After driving a short distance down the street, the man fired the gun into the air. After the shot was fired, the cousins went back into Fernando's house, and Fernando called the police. In the interim, the truck made another u-turn and parked at the curb a short distance from Fernando's house. Fernando (who was still on the phone with the 911 operator) and Oliverio were watching the truck when the police arrived, and no one got into or out of the truck. The man they saw arrested was the same man that had pointed the gun at them.

The cousins' testimonies differed as to where the man was when he pointed the gun at them: Fernando testified that the man pointed the gun at him through the front window of the truck and that he did not exit the truck. He testified that the driver's side window was down. Oliverio testified that the truck's

---

[2]Both Oliverio and Fernando testified through an interpreter.

windows were up but also that the driver's side window was slightly rolled down. He also testified that the man stopped in the middle of the street in front of his cousin's house, opened the door, walked around the front of the truck, pulled out the gun, and pointed it at them before getting back into the truck, driving down the street, firing a shot, and then making another u-turn. There was also some confusion in their testimonies about who was inside and outside of the house after the gunshot and about the view from inside and outside of the house. At trial, neither Fernando nor Oliverio was able to identify Martinez as the driver.

The first officer to respond to the 911 call was Fort Worth Police Officer Jill Abramoski. She testified that she was only a block away from the location of the incident when she received the 911 dispatch, and upon arriving at the location, she identified a truck in the area matching the description dispatch provided; there were no other vehicles in the area that matched the description. She recognized Martinez, the driver, from prior interactions and knew he did not live on Fernando's street. He was the only person in the truck, and the driver's side window was down. Martinez gave her permission to search his truck. As he moved to exit the truck, he lifted the center console and a handgun fell from it onto the back seat floorboard. At this point, Abramoski handcuffed Martinez and recovered the handgun, a .38 caliber pistol that contained five spent casings. A Ziploc-style bag in the truck's open console contained three additional live rounds of the same caliber.

3

Officer James Alexander testified that he went to Fernando's house, that the cousins were visibly shaken and scared, and that they would not go into the street but just pointed from the house to the truck's location. Victoria Van Fleet, a forensic scientist with the Fort Worth Police Department Crime Laboratory, testified that she examined the gun, that the hammer had to be manually cocked to fire it, and that a gunshot residue test can sometimes determine if a person has fired a weapon. However, no evidence was introduced that Martinez was given such a test or that fingerprints were taken from the weapon to match to Martinez.

Martinez was charged with aggravated assault with a deadly weapon for pointing a gun at Fernando. A jury found him guilty, found that a firearm was used, and sentenced him to seven years' confinement. This appeal followed.

### III.  Sufficiency of the Evidence

Martinez challenges both the legal and factual sufficiency of the evidence to support his conviction. However, as the court of criminal appeals has recently overruled *Clewis v. State*, 922 S.W.2d 126, 133–34 (Tex. Crim. App. 1996), we review his sufficiency complaint under only the standard set out in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). *See Brooks v. State*, No. PD-0210-09, 2010 WL 3894613, at *1 (Tex. Crim. App. Oct. 6, 2010) (overruling *Clewis*).

## A. Standard of Review

In reviewing the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009). Thus, when performing a sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

## B. Analysis

A person commits the offense of aggravated assault if he intentionally or knowingly threatens another with imminent bodily injury and uses or exhibits a deadly weapon during the commission of the assault. *See* Tex. Penal Code Ann. § 22.02(a)(2) (Vernon Supp. 2010). While the cousins' testimonies were not perfectly consistent, particularly concerning Martinez's location when he pointed the gun, the record reflects that Martinez possessed a firearm, that he aimed the firearm at Oliverio and Fernando after initiating a confrontation with them, that he fired the gun into the air, and that the cousins felt scared and were visually shaken by the incident. *See id.* The trier of fact resolves disputes involving the credibility of witness testimony; applying the above standard of review, we hold that the evidence is sufficient to sustain the conviction for aggravated assault with a deadly weapon. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. We overrule Martinez's sole point.[3]

---

[3]While Martinez phrased his points in terms of legal and factual sufficiency, as mentioned above, the court of criminal appeals has since overruled *Clewis*, so his sufficiency points are now but a single point.

## IV. Conclusion

Having overruled Martinez's sole point, we affirm the trial court's judgment.


BOB MCCOY
JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  December 2, 2010